IN THE UNITED STATES DISTRICT COURT    RECEIVED

FOR THE MIDDLE DISTRICT OF ALABAMA

2005 JUL -7  A 9: 34

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

| | |
|---|---|
| MICHAEL McPHERSON, on behalf of himself and on behalf of a class of persons similarly situated, | *<br>*<br>*<br>* |
| Plaintiff, | *<br>* |
| v. | *<br>* |
| SPECIAL DATA PROCESSING CORPORATION d/b/a NATIONAL MAGAZINE EXCHANGE, | *<br>*<br>*<br>* |
| Defendant. | *<br>* |

Case Number:  2 : 05cv635 - B

CLASS ACTION

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

COMES NOW, Michael McPherson, Plaintiff in the above-referenced case, on behalf of himself and on behalf of a class of similarly situated persons, and hereby files this, his Class Action Complaint against Special Data Processing Corporation d/b/a National Magazine Exchange.

## I. INTRODUCTION

Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated to obtain relief for the Defendant Special Data Processing Corporation d/b/a National Magazine Exchange's (hereafter "NME") ongoing systematic practice of violating the Fair Credit Reporting Act ("FCRA") when soliciting customers for its magazine subscription programs. Specifically, NME engages in a systematic practice of unilaterally obtaining consumer reports from consumer reporting agencies, without any consumer consent or disclosure, when determining the recipients of its deceptive "Million Dollar Strike It Rich" sweepstakes mailer. NME's practice of obtaining and utilizing consumer reports without proper authorization to determine the

SCANNED
W 7/12/05

recipients of its deceptive "Million Dollar Strike It Rich" sweepstakes solicitation is violative of the FCRA, as it does not constitute a "permissible purpose" under the FCRA. While the FCRA permits the unilateral release and use of consumer information for the limited purpose of making a "firm offer of credit" to a consumer by the credit or insurance provider, NME's use of consumer reports as described herein is violative of the FCRA in that no legitimate "firm offer of credit" - - - indeed, absolutely no offer of credit by NME whatsoever - - - is made in conjunction with NME's "Million Dollar Strike It Rich" sweepstakes solicitation. In truth, NME's use of consumer reports in this fashion is merely an improper means by NME to determine the target audience of its deceptive sweepstakes solicitation and sales pitches - - - purposes which Congress clearly intended for the FCRA to curtail.

## II. PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Michael McPherson is an adult resident citizen residing in Eufaula, Alabama.

2.      Defendant Special Data Processing Corporation d/b/a National Magazine Exchange is, upon information and belief, a Florida corporation located at 16120 U.S. Highway 19 North, Clearwater, Florida 33764. NME is a marketer and seller of magazine subscriptions and other items.

3.      Jurisdiction is proper pursuant to 28 U.S.C. §1331, as Plaintiff's FCRA claims present federal questions and give rise to federal subject matter jurisdiction.

4.      Venue is proper in this district in that NME transacts business in this district, the named Plaintiff resides in this district, and a substantial portion of the acts or omissions giving rise to this action occurred in this district.

2

## III.  FACTUAL BACKGROUND

5.    Special Data Processing Corporation d/b/a National Magazine Exchange is a marketer and seller of purported "discount" magazine subscriptions.  NME solicits consumers to telephone it by sending certain targeted consumers a direct mail piece which is deceptively designed to lead the recipient to believe that he or she is the winner of NME's purported "Million Dollar Strike It Rich" sweepstakes.  NME's mailers use words and phrases intended to arouse a sense of urgency surrounding the recipient's purported winnings, such as "SECOND NOTICE" and "WE HAVE BEEN TRYING TO REACH YOU REGARDING YOUR $1,000,000.00," despite the fact that no prior notice or attempt at communication has been made.  A copy of NME's standard form mailer distributed to consumers is attached hereto as Exhibit A.

6.    Further, in the lower right-hand corner on the back of NME's mailer, the recipient is informed in the fine print that "Based upon your consumer report, and because at the time of this correspondence, you meet our credit criteria, YOU HAVE BEEN APPROVED TO RECEIVE OUR MAGAZINE OFFER ON CREDIT."  (See Exhibit A.)  NME's mailer contains no reference to or description of any "magazine offer," much less any credit terms or credit parameters for this purported magazine offer.  (See Exhibit A.)

7.    NME's mail pieces do not disclose that recipients who call regarding their purported "winnings" receive a variety of sales pitches for additional goods and services.  Targeted recipients who contact NME via the 800 number contained in large print on NME's mailer are informed that they have won nothing, and that they may only be eligible to participate in NME's purported "Million Dollar Strike It Rich" sweepstakes.  NME's representatives, working from a uniform telephone script, then aggressively attempt to induce the consumer into purchasing one

3

or more of NME's magazine subscription programs, along with other goods and services, by enticing the consumer with promises such as a "guaranteed free men's and women's diamond watch." At no time during NME's uniform sales pitches and sales transaction procedures, or any time thereafter, is there any mention or reference, either verbally or in writing, to the existence or availability of any "offer of credit" extended by NME. Indeed, NME's standard form documentation sent to purchasers or those interested in NME's magazine offers does not mention or make reference to the existence or availability of any "offer of credit" extended by NME.

8.    Section 1681 of the Fair Credit Reporting Act sets forth the congressional findings that prompted the adoption of the FCRA as well as the purpose of the Act. In this section, Congress made it clear that the FCRA is designed to preserve the consumer's privacy in the information maintained by consumer reporting agencies. *See* 15 U.S.C. §1681(a)(4). Specifically, Congress states: "There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." *Id.*

9.    One means by which Congress effectuated this purpose was prohibiting the release of consumer credit reports unless the release occurs for one of the permissible purposes set forth in 15 U.S.C. §1681b(a). Section 1681b(a) in turn provides that, "[s]ubject to subsection (c) of this section, any consumer agency may furnish a consumer report under the following circumstances and no other . . . ." Many of the enumerated permissible purposes set forth in §1681b are transactions initiated by the consumer, and thus do not create significant privacy concerns. The subsection does set forth, however, limited situations in which a consumer credit agency may furnish a consumer report even though the consumer has not initiated or authorized

4

the release. One such instance is when a credit or insurance provider is extending the consumer a "firm offer of credit." §1681b(c)(1)(B)(i). In allowing consumer agencies to release information for the purpose of a "firm offer of credit," Congress "balance[d] any privacy concerns created by pre-screening with the benefit of a firm offer of credit or insurance for all consumers identified through the screening process." *See* S. Rep. No. 103-209, 13 (1993). "Congress apparently believe[d] that people are more willing to reveal personal information in return for guaranteed offers of credit than for catalogs and sales pitches." *Trans Union Corp. v. FTC*, 267 F. 3d 1138, 1143 (D.C. Cir. 2001).

10.    NME's practice of obtaining and utilizing consumer reports as described herein is a ruse to obtain private and sensitive credit information on consumers in order to determine who will be the target recipients of NME's deceitful "Million Dollar Strike It Rich" sweepstakes mailer. These are the precise types of impermissible purposes that the FCRA was intended to curtail.

11.    At no time does NME offer or intend to offer or make available any legitimate "firm offer of credit" to consumers. Indeed, the direct mailer informing the consumer that he or she has "been approved to receive [NME's] magazine offer on credit . . . [b]ased on your consumer report" does not qualify as a firm offer of credit under the FCRA, and is merely a sham to justify obtaining credit information for impermissible purposes. The NME mailer contains no reference to or description of any magazine offer, much less any remote reference to any credit terms or credit parameters which a consumer must necessarily consider when determining whether or not to accept or reject a "firm offer of credit." NME's mailer fails to include even a general description of the purported "credit" offered by NME, much less any reference to any

5

determinative credit considerations such as any applicable interest rate, payment terms, method of computing interest, length of repayment, or even the amount of "credit" offered. Likewise, there is no mention or reference, either verbally or in writing, to the existence or availability of any "offer of credit" extended by NME in its subsequent sales pitches and sales transaction procedures with consumers.

12.     The statutory scheme of the FCRA makes clear that a "firm offer of credit" must have sufficient value for the consumer to justify the absence of the statutory protection of his privacy. Congress did not intend to allow access to consumer credit information "for catalogs and sales pitches." *Trans Union Corp.*, 267 F. 3d at 1143. Such importuning simply - - - and understandably - - - is not among the permissible reasons for which a credit agency may disclose a consumer's credit information.

13.     Because NME's purported "offer" is nothing more than a guise for a solicitation rather than a legitimate credit product, it cannot be considered a "firm offer of credit" for purposes of the FCRA. Alternatively, to the extent any offer of credit is extended by NME, it is too vague and ambiguous to constitute an offer capable of acceptance, and/or is a mere fiction and not extended with the expectation that consumers will avail themselves of the offer. In either respect, NME has no "permissible purpose" under the FCRA to obtain consumer reports without proper disclosure or authorization.

14.     NME's unauthorized use of sensitive credit information contained in consumer reports under the auspices of an "offer of credit" is nothing more than a ruse to target victims of NME's deceitful solicitation and subsequent unscrupulous marketing techniques. Consumers who contact the 800 number largely displayed on NME's solicitation to inquire about their purported

6

"winnings" are aggressively induced and enticed to purchase one or more of NME's magazine subscription programs, as well as other available goods and services. Upon information and belief, consumers who purchase NME's magazine subscriptions or who otherwise provide billing information to NME are routinely assessed additional amounts for unauthorized subscriptions, goods and services. Upon information and belief, NME's questionable billing practices have been the focus of several inquiries by attorney generals and regulatory agencies, and Plaintiff is aware of at least one action filed by the Federal Trade Commission in August 2004 challenging certain sales and billing practices engaged in by NME. *FTC v. Special Data Processing Corporation*, United States District Court, Middle District of Florida, Case No.: 8:04-cv-1955-T-23EAJ.

15.    Plaintiff Michael McPherson was a victim of NME's improper practices and FCRA violations as alleged herein. In or around December 2004, NME, without disclosure, consent, or authorization, obtained Plaintiff's consumer report, as demonstrated in Exhibit B, for the improper purpose of targeting Plaintiff as a recipient of NME's deceitful solicitation. Plaintiff did, in fact, receive NME's "Million Dollar Strike It Rich" sweepstakes solicitation informing Plaintiff that NME "HAD BEEN TRYING TO REACH YOU REGARDING YOUR $1,000,000.00." Believing he had won, Plaintiff was induced to contact NME via the 800 number contained in the large print on the NME mailer. Upon contacting NME, Plaintiff was informed by its representatives for the first time that he had won nothing and that he was only eligible to participate in NME's sweepstakes if he provided certain requested credit card information. At no time during NME's sales pitches to Plaintiff, nor during any sales transaction procedures, was there any mention or reference, either verbally or in writing, to the existence or availability of any "offer of credit" extended by NME. Likewise, the standard form NME documentation

7

subsequently sent to Plaintiff did not mention or make reference to the existence or availability of any "offer of credit" extended by NME. Plaintiff's credit card was subsequently assessed amounts by NME for goods or services which were not requested or authorized by Plaintiff.

## IV. CLASS ACTION ALLEGATIONS

16.    Plaintiff Michael McPherson brings this action as a member of the following proposed class:

> All persons in the United States whose credit report or credit scores have been procured or obtained by Special Data Processing Corporation d/b/a National Magazine Exchange or any of its affiliated subsidiaries or entities in connection with any direct mailer or solicitation distributed by Special Data Processing Corporation d/b/a National Magazine Exchange or any of its affiliated subsidiaries or entities, and to whom Special Data Processing Corporation d/b/a National Magazine Exchange has failed to obtain proper authorization and provide proper notification as mandated by the Fair Credit Reporting Act.

17.    Excluded from the proposed class are the Defendants, any entity in which any Defendant has a controlling interest, and any agents, employees, officers, and/or directors of the Defendants or any other such entities and their representatives, heirs, successors and/or assigns.

18.    **Numerosity:** On information and belief, the members of the class number at least in the hundreds and the class is so numerous that individual joinder of all class members as parties to this action would be impracticable.

19.    **Existence and Predominance of Common Questions of Law and Fact:** Questions of law and fact of common and general interest to the class exist as to all class members and predominate over any questions affecting only individual members of the class. Said common questions include, but are not limited to, the following:

8

a.    Whether NME wrongfully and improperly failed to obtain proper consent and authorization when obtaining consumer reports on the Plaintiff and class members.

b.    Whether NME has engaged in a systematic pattern and practice of willfully obtaining consumer reports without an appropriate permissible purpose as mandated by the Fair Credit Reporting Act.

c.    Whether NME's conduct as described herein constitutes a violation of §1681b of the Fair Credit Reporting Act.

d.    Whether NME's conduct as described herein constitutes a violation of §1681e of the Fair Credit Reporting Act.

e.    Whether NME's conduct described herein is willful and reckless as described by §1681n of the Fair Credit Reporting Act.

f.    Whether the Plaintiff and class members are entitled to recover money damages for NME's violations of the Fair Credit Reporting Act as described herein.

g.    Whether NME has unlawfully suppressed and concealed its improper use of the Plaintiff's and class members' consumer reports when distributing the direct mailers described herein.

h.    Whether NME's conduct toward the Plaintiff and class members described herein constitutes negligence and wantonness.

i.    Whether the Plaintiff and class members are entitled to declaratory relief as requested herein.

9

    j.    Whether the Plaintiff and class members are entitled to injunctive relief requiring NME to comply with the mandates of the Fair Credit Reporting Act.

    k.    Whether the Plaintiff and class members are entitled to class wide relief as sought in this complaint.

20.    **Typicality:** The claims of the named Plaintiff are typical of the claims of the class.

21.    **Adequate Representation:** The Plaintiff will fairly and adequately protect the interests of the members of the class and has no interest antagonistic to those of other class members. Plaintiff has retained class counsel competent to prosecute class actions.

22.    **Superiority:** The class action in superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of the class is impracticable. The interest of judicial economy favor adjudicating the claims for the Plaintiff class rather than on an individual basis.

23.    **Risk of Inconsistent or Varying Adjudications:** Class action treatment is proper and this action should be maintained as a class action because the risk of separate actions by individual member of the class would create a risk of: (a) inconsistent or varying adjudication with respect to individual class members which would establish incompatible standards of conduct for the Defendant as the party opposing the class; and/or (b) adjudications with respect to individual class members would, as a practical matter, be dispositive of the interest of other class members would, as a practical matter, be dispositive of the interest of other class members not party to the adjudication or would substantially impair or impeded their ability to protect their interests. In addition, Defendant, as the party opposing the class, has acted or refused to act on grounds

10

generally applicable to the class, thereby making relief appropriate with respect to the class as a whole.

24.     **Common Questions of Law and Fact Predominate:** Questions of law and fact predominate over any questions affecting only individual class members and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### COUNT ONE
### Violation of 15 U.S.C. § 1681b

25.     Plaintiff adopts and incorporates herein by reference the allegations of paragraphs 1 through 26 of this Complaint.

26.     Section 1681b of the FCRA prohibits any person from using or obtaining a consumer report unless the report is obtained for a permissible purpose as defined by the Act, and such purpose is certified by the user in accordance with the FCRA. With respect to any credit or insurance transaction that is not initiated by the consumer, a consumer report can only be obtained and used by a person only if the transaction consists of a firm offer of credit or insurance.

27.     As described herein, NME offers no firm offer of credit with respect to the solicitation at issue. As such, NME has no permissible purpose in obtaining and using consumer reports on the Plaintiff and class members.

28.     NME's violations of §1681b were committed willfully and/or negligently as proscribed by §1681o and §1681n of the FCRA. As a result of NME's violations, Plaintiff and class members have been damaged in an amount exceeding $100 per class member. Plaintiff and class members are entitled to all compensatory damages, statutory damages and/or penalties, punitive damages, attorneys' fees, costs, and other relief proscribed and recoverable under the Fair

11

Credit Reporting Act.

## COUNT TWO
### Violation of 15 U.S.C. §1681e

29.    Plaintiff adopts and incorporates herein by reference the allegations of paragraphs 1 through 30 of this Complaint.

30.    Section 1681e of the FCRA requires that users of consumer reports certify the purposes for which the information is sought from the consumer reporting agency, and to certify that the information will be used for no other purpose.

31.    Under the circumstances outlined herein, NME has negligently and/or willfully and knowingly misrepresented and falsely certified the purposes for which the consumer reports on Plaintiff and class members were sought and used.

32.    NME's violation of §1681e of the FCRA was committed willfully and/or negligently as proscribed by §1681o and §1681n of the Fair Credit Reporting Act. As a result of NME's violations, Plaintiff and class members have been damaged in an amount exceeding $100 per class member. Plaintiff and class members are entitled to all compensatory damages, statutory damages and/or penalties, punitive damages, attorneys' fees, costs, and other relief proscribed and recoverable under the Fair Credit Reporting Act.

## COUNT THREE
### Violation of 15 U.S.C. §1681m

33.    Plaintiff adopts and incorporates herein by reference the allegations of paragraphs 1 through 34 of this Complaint.

34.    Section 1681m of the FCRA provides that any person using a consumer report to make a firm offer of credit shall provide with each written solicitation made to the consumer

12

regarding the transaction a clear and conspicuous statement disclosing certain statutorily required information. The notice must inform the consumer that: (1) the recipient's consumer credit report was used in determining who should be sent the offer; (2) the consumer was selected because the consumer satisfied certain criteria; (3) the offer may not be extended if the consumer does not continue to meet the criteria bearing on creditworthiness or provide the required collateral; (4) the consumer has the right to opt out of future offers by prohibiting the unsolicited use of information contained in their consumer file; and (5) the consumer may exercise that right by calling a specified toll-free number or by contacting the credit agency at a given address.

35.    Plaintiff alternatively pleads that, in the event NME's solicitation constitutes an appropriate "firm offer of credit" as defined under the FCRA, NME has failed to provide §1681m's disclosures in a clear and conspicuous manner as required by the FCRA.

36.    NME's violation of §1681m of the FCRA was committed willfully and/or negligently as proscribed by §1681o and §1681n of the Fair Credit Reporting Act. As a result of NME's violations, Plaintiff and class members have been damaged in an amount exceeding $100 per class member. Plaintiff and class members are entitled to all compensatory damages, statutory damages and/or penalties, punitive damages, attorneys' fees, costs, and other relief proscribed and recoverable under the FCRA.

## COUNT FOUR
### Violations of Alabama Code §8-19D-2

37.    Plaintiff adopts and incorporates herein by reference the allegations of paragraphs 1 through 38 of this Complaint.

38.    Alabama Code §8-19D-2 provides that "[i]t shall be unlawful for any person to

solicit or sell a product or service through the mail by implying or expressly representing in the solicitation that the person being solicited has won or has been selected to receive a prize or purported prize unless the qualifying language appears in print that is clear, easily read, and conspicuous."

39.    NME's deceptive solicitation attached hereto as Exhibit A fails to provide the requisite qualifying language in a clear and conspicuous manner as mandated by Alabama Code §8-19D-2. Plaintiff and class members have been damaged as a result of NME's deceitful solicitation.

40.    As a result of NME's violations of Alabama Code §8-19D-2, Plaintiff and class members are entitled to any recoverable compensatory damages, statutory damages and/or penalties, punitive damages, reasonable attorneys' fees, and costs.

## COUNT FIVE
### Fraud and Misrepresentation

41.    Plaintiff adopts and incorporates herein by reference the allegations of paragraphs 1 through 40 of this Complaint.

42.    NME has an affirmative duty not to misrepresent material facts to Plaintiff and class members regarding NME's solicitation practices, utilization of consumer reports, and other acts and/or omissions engaged in by NME. NME fraudulently represented several facts to Plaintiff and class members, including, but not limited to: (1) that Plaintiff had won NME's sweepstakes program, and that NME had been attempting to contact Plaintiff about the same; (2) that Plaintiff's consumer report was obtained and utilized by NME for the purpose of offering NME's magazine offer on credit, when no such offer existed.

14

43.    Plaintiff relied to his detriment on these misrepresentations made by NME, and has been damaged as a result thereof.

44.    As a result of NME's intentional fraud and misrepresentation, Plaintiff has been damaged and is entitled to any and all compensatory damages, punitive damages, reasonable attorneys' fees, costs, and other appropriate relief.

### COUNT SIX
### Fraudulent Suppression and Concealment

45.    Plaintiff adopts and incorporates herein by reference the allegations of paragraphs 1 through 43 of this Complaint.

46.    NME had an affirmative duty to disclose to Plaintiff that Plaintiff's consumer report had been obtained by NME for an impermissible purpose in violation of the Fair Credit Reporting Act. Further, NME had an affirmative duty to disclose to Plaintiff that Plaintiff's consumer report had been obtained and utilized by NME for purposes unrelated to any firm offer of credit, as no offer of credit pertaining to NME's magazine offer existed.

47.    Plaintiff relied to his detriment on these material omissions by NME, and has been damaged as a result thereof.

48.    As a result of NME's intentional suppression and concealment, Plaintiff has been damaged and is entitled to any and all compensatory damages, punitive damages, reasonable attorneys' fees, costs, and other appropriate relief.

### COUNT SEVEN
### Negligence and Wantonness

49.    Plaintiff adopts and incorporates herein by reference the allegations of paragraphs 1 through 47 of this Complaint.

50.    NME owed a duty to the Plaintiff to obtain consumer reports only for permissible purposes contemplated by the Fair Credit Reporting Act. NME has negligently and wantonly breached this duty owed to Plaintiff, and Plaintiff has been damaged as a result thereof.

51.    As a direct and proximate result of the negligent and wanton acts and omissions of NME, Plaintiff has sustained damages, including damages for mental anguish and emotional distress, and is entitled to recover any and all compensatory damages, as well as punitive damages, attorneys' fees, costs, and other appropriate relief.

## COUNT EIGHT
## Complaint for Declaratory Relief

52.    Plaintiff adopts and incorporates herein by reference the allegations of paragraphs 1 through 50 of this Complaint.

53.    There exists a justiciable controversy over the duties, obligations, and responsibilities of NME in obtaining and procuring consumer credit reports under the circumstances outlined herein, and in failing to provide a firm offer of credit to consumers in accordance with the Fair Credit Reporting Act. Plaintiff respectfully requests the Court to enter an order declaring the practices described herein as being improper, violative of the Fair Credit Reporting Act, and tortious under the laws of all fifty (50) states. Plaintiff requests that the same declaratory and equitable relief be granted to those absent class members similarly situated.

## COUNT NINE
## Complaint for Injunctive Relief

54.    Plaintiff adopts and incorporates herein by reference the allegations of paragraphs 1 through 52 of this Complaint.

16

55.    Plaintiff, on behalf of himself and on behalf of the putative class, seeks injunctive relief requiring NME to stop obtaining and utilizing consumer reports for purposes that are violative of the Fair Credit Reporting Act, and/or to conform its practices so that NME's actions comply with the mandates of the Act.  Absent injunctive relief, Plaintiff and the class members will suffer irreparable injury.

### PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff Michael McPherson, individually and in a representative capacity on behalf of all persons similarly situated, demands judgment against NME for (1) all amounts recoverable under the provisions of the Fair Credit Reporting Act, including any and all statutory penalties; (2) reasonable attorneys' fees and costs; (3) compensatory damages as may be proved at trial, including damages for mental anguish and emotional distress; (4) punitive damages as may be proved at trial; (5) declaratory and injunctive relief as is deemed just and appropriate by the Court; (6) and such other, further and additional relief as is appropriate under the circumstances.  Furthermore, Plaintiff requests this Honorable Court to certify this matter as a class action pursuant to Federal Rules of Civil Procedure 23, and to award the class those damages requested herein.

### PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY

R. Brent Irby

17

OF COUNSEL:
McCALLUM, HOAGLUND, COOK & IRBY, L.L.P.
2062 Columbiana Road
Vestavia Hills, Alabama 35216
Tel:    (205)824-7767
Fax:    (205)824-7768

**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL/RETURN RECEIPT
REQUESTED AS FOLLOWS:**

Specialized Data Processing Corporation
d/b/a National Magazine Exchange
16120 U.S. Highway 19 North
Clearwater, Florida 33764

# EXHIBIT

# A

N.M.E.
16120 U.S. 19 NORTH
CLEARWATER, FL 33764

**FamilyCircle**®

SECOND NOTICE

CALL 1-800-303-6247
ID # 6424094406

DEAR ALICIA
WE HAVE BEEN TRYING TO REACH YOU REGARDING OUR $1,000,000.00
SWEEPSTAKES ID # 6424094406.
PLEASE CALL US AT THE ABOVE NUMBER. THIS IS A FREE CALL.

SINCERELY, PAT JONES, SALES REPRESENTATIVE

The Family Circle logo appears with publisher permission for promotional purposes. This Sweepstakes is sponsored exclusively by NME. Family Circle is not affiliated with NME.
Prize will be awarded as 30 annual installments of $33,333.34. There is no purchase required to enter or win and a purchase will not improve your chances of winning.

*Entry Instructions:*

Please call the telephone number on the reverse at your earliest convenience regarding your 1,000,000 Sweepstakes I.D. number.

# $1,000,000.00 "Strike It Rich IV" Sweepstakes Official Rules

$1,000,000 "STRIKE IT RICH IV" SWEEPSTAKES OFFICIAL RULES

**NO PURCHASE OR PAYMENT NECESSARY TO ENTER OR WIN.**
**A PURCHASE WILL NOT IMPROVE YOUR CHANCES OF WINNING.**

To enter, follow all entry instructions specified elsewhere in this offer. Sweepstakes begins 12:01 AM Eastern Time (ET) on 11/1/2003. Sweepstakes ends 12:01 AM Eastern Time (ET) on 11/1/2003. No unsolicited mail-in entries accepted at Sponsor's address. One entry per person and household per day irrespective of the method of entry.

STRIKE IT RICH IV SWEEPSTAKES: $1,000,000.00 GRAND PRIZE CONSUMER DISCLOSURES: One grand prize will be awarded. The winner of the guaranteed Grand Prize can choose either a $1,000,000.00 annuity payable in 30 annual installments of $33,333.34 (value of annuity as of the date these rules were printed: $467,628.89) or one lump sum payment of $400,000. Estimated odds of winning: 1:50,000,000. You have not yet won. No purchase is necessary. Your entry must be received by the date specified elsewhere in this offer or by 11:59 PM (ET) on 12/15/2005, whichever is sooner. Sponsor: National Magazine Exchange, 16120 US 19 North, Clearwater, FL 33764.

STRIKE IT RICH IV SWEEPSTAKES: EARLY BIRD/BONUS PRIZE CONSUMER DISCLOSURES: One Early Bird/Bonus Prize will be awarded. The winner of the Early Bird/Bonus Prize will receive $5,000.00 in Cash or his/her choice of merchandise or travel prize offered by Sponsor valued at $5,000.00. To qualify for the Early Bird/Bonus Prize, your entry must be received by the Early Bird entry deadline specified elsewhere in this offer or by 11:59 PM (ET) on 12/15/2005, whichever is sooner. Estimated odds of winning: 1:50,000,000. You have not yet won. No purchase is necessary. Sponsor: National Magazine Exchange, 16120 US 19 North, Clearwater, FL 33764.

The following applies to any prize offered above. If offered online, online entrants subject to all online entry, and eligibility qualifications, online disclosures, and Sponsor's privacy policy, which will be displayed on Website. Sponsor is not responsible for lost, late, misdirected, illegible, mutilated or postage due mail or for incorrect or inaccurate capture of entry information or for failure of telephone network, computer equipment, software, human error or any combination thereof. All entries become the Sponsor's property and will not be returned or acknowledged. Any sweepstakes notice that contains or results from any error will be void. If any prize, entry or more than one winning prize notice is issued, the prize will be awarded in a random drawing from among all eligible entries received in response to such notices.

The prize will be determined in a random drawing on or about 12/31/2005 by an independent judging organization whose decisions are final. Winner(s) will be notified by mail and will be required to complete, sign and have notarized an affidavit of eligibility, release of liability, and where legally permissible, a publicity release which must be returned within 14 days of date printed on notification or an alternate winner may be selected in a random drawing. Prize is delivered within approximately 30 days of receipt of executed affidavit. If prize is claimed by a minor, the prize will be awarded to an alternate in a random drawing. If prize is won by a minor, it will be awarded in the name of parent or legal guardian who must execute affidavit and releases on minor's behalf. All taxes on prizes are the sole responsibility of the winner. Acceptance of a prize constitutes permission (except where prohibited by law) to use winner's name, hometown, and likeness, prize won and comments about winning for purposes of advertising, promotion and publicity (in any and all media now known or hereafter devised) without additional compensation. A prize is not transferable or assignable except to a surviving spouse. Open to legal residents of the 50 United States and the District of Columbia age 18 and older at time entry. This sweepstakes is not open to employees and their immediate families and those living in same household of the Sponsor, all sweepstakes presenters and their advertising and promotional agencies, and the independent judging organization are not eligible. All federal, state and local laws and regulations apply. Void where prohibited by law.

To request a winners list, available within 90 days after the drawing, send a self-addressed, stamped envelope by 12/15/2005 to: Strike It Rich Winners List, PO Box 9116, Medford, NY 11763-9116.

If you do not wish to have your name and address removed from any future sweepstakes mailings from our company, you may do so by writing to: 16120 US 19 North, Clearwater, FL 33763.

We obtain your name and because, at the time of this correspondence, you meet our credit criteria, YOU HAVE BEEN SELECTED TO RECEIVE OUR MAGAZINE OFFER ON CREDIT. This credit may not be extended if, after you respond, we find you no longer meet our credit criteria. If you would like to have your name and address removed from any future pre-approved solicitations, contact Opt-Out by calling the automated Opt-Out Request Line at 1-888-567-8688 or by writing the credit bureaus below.

Consumer Credit Marketing, Opt Out, PO Box 97328, Jackson, MS 39288. Consumer Opt Out Services, Experian Credit Marketing, PO Box 919, Allen, TX 75013, or Equifax Options, PO Box 740123, Atlanta, GA 30374.

Residents of Vermont, South Dakota and Louisiana: If you chose to take advantage of our magazine offer, your order will be entered with the receipt of the order. You must limit the cancellation period to ten (10) days from the day of receipt by the consumer.

EXHIBIT

B

**experian**

Prepared for
MICHELLE L MCPHERSON
Report number
2914930625

www.experian.com/disputes
Call 800 509 8495
Page 14 of 16

| Source | Date of request |
|---|---|
| **CAPITALONE FSB**<br>PO BOX 25625<br>RICHMOND VA 23261 | 2-05, 1-05, 12-04, 10-04 |
| **M A C**<br>1405 W GRAND BL ANNEX24<br>DETROIT MI 48202 | 2-05 |
| **BNA AMERICA N A**<br>100 CHRISTIANA ROAD<br>NEWARK DE 19713 | 1-05 |
| **CHASE USA**<br>200 DUFFY AVE #4H2<br>HICKSVILLE NY 11801 | 1-05 |
| **FNNB/THE SPIEGEL GROUP**<br>535 W 122ND AVE<br>WESTMINSTER CO 80234 | 1-05, 11-04, 10-04 |
| **CAPITAL ONE BANK**<br>1955 COX RD<br>GLENALLEN VA 23060 | 12-04, 10-04, 10-04 |
| **TRADE CREDIT CARD**<br>GLEBE RD FL 11<br>ARLINGTON VA 22203 | 12-04 |

| Source | Date of request |
|---|---|
| **WFNNB/CHADWICKS**<br>800 TECH CENTER DR<br>GAHANNA OH 43230 | 12-04 |
| **WFNNB/LERNER**<br>220 W SCHROCK RD<br>WESTERVILLE OH 43081 | 12-04 |
| **NATIONAL MAGAZINE EXCHNG**<br>13787 BELCHER RD S<br>LARGO FL 33771 | 12-04 |
| **ADVANTA BANK CORP**<br>500 OFFICE CENTER DR STE<br>FORT WASHINGTON PA 19034 | 10-04, 9-04 |
| **E*TRADE BANK**<br>671 N GLEBE RD<br>ARLINGTON VA 22203 | 9-04 |
| **ADVANTA BANK CORP**<br>500 OFFICE CENTER DR STE<br>FORT WASHINGTON PA 19034 | 9-04 |
| **WFNNB/THE SPIEGEL GROUP**<br>995 W 122ND AVE<br>WESTMINSTER CO 80234 | 8-04 |
| **FHLMC FREDDIE MAC**<br>8200 JOANS BRANCH DR<br>MCLEAN VA 22102 | 8-03 |